Filed 7/31/14  In re M.L. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In M.L., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>                v.<br><br>M.L.,<br><br>        Defendant and Appellant. | F068454<br><br>(Super. Ct. No. JJD063151)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Tulare County.  Hugo J. Loza, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)

Courtney M. Selan, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Clara M. Levers, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]        Before Cornell, Acting P.J., Poochigian, J. and Franson, J.

## INTRODUCTION

At the conclusion of a jurisdiction hearing on October 21, 2013, the juvenile court found that appellant M.L., then a minor, committed first degree residential burglary (Pen. Code, § 459)[1] as alleged in a petition filed pursuant to Welfare and Institutions Code section 602.[2] The court found appellant had 546 days credit for time served and dismissed the wardship as unsatisfactorily completed.

Appellant contends there was insufficient evidence that he committed burglary and seeks reversal of the juvenile court's orders. We disagree with appellant and will affirm the findings and orders of the juvenile court.

## FACTS

Mario Arogon left his home in Earlimart "intact" at 5:00 a.m. the morning of June 17, 2010, and did not return until 5:00 p.m. When Arogon returned, he found his home vandalized, his television sets were missing, his clothes were strewn around, the mattresses and sofa cushions were on the floor. Arogon was missing $1,000 in currency. No one had permission to be in Arogon's home that day and he called the police. Arogon did not recognize appellant and did not give him permission to be in the home or to take property from it. Arogon did not recognize a knife found in the bedroom and it did not belong to him.

Tulare County Sheriff's Deputy Joseph Englend was dispatched to investigate the burglary of Arogon's home. Englend found the point of entry into the home was a rear window from the backyard on the southwest portion of home. The screen had been

---

[1]     Unless otherwise indicated, statutory references are to the Penal Code.

[2]     The petition was filed on September 12, 2011. Appellant was nearly 18 years old when the petition was filed. Appellant had prior adjudications in 2008 for misdemeanor vandalism (§ 594, subd. (a)) and in 2010 for felony driving or taking a vehicle (Veh. Code, § 10851, subd. (a)) and felony receipt of stolen property (§ 496, subd. (a)).

removed from the window. The sliding window had been jarred to bypass the lock. Englend explained that all of the other doors and windows were locked and secured. Inside the house, Englend found dresser drawers had been pulled out, especially in the master bedroom, and clothes were strewn about.

Arogon told Englend the knife inside the house did not belong to him. Englend seized the knife and took two latent prints from it. The prints were sent to a crime laboratory for analysis. There was enough detail from the fingerprints for the crime analyst to compare the latent prints with known prints from the Department of Justice collected from earlier arrests. The analyst concluded with 100 percent certainty that the prints from the knife belonged to appellant. The identity of the fingerprints were verified by a second analyst through a process of blind identification whereby the second analyst does not know if there was a prior identification.

## SUFFICIENCY OF THE EVIDENCE

Appellant contends there was insufficient evidence to support the juvenile court's finding that he committed first degree burglary. Relying on *Mikes v. Borg* (9th Cir. 1991) 947 F.2d 353 (*Mikes*), appellant argues that a fingerprint alone is not enough to show proof when the fingerprint was placed on an object or a particular location. We find appellant's argument unpersuasive and affirm the juvenile court's findings.

In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. The standard of review is the same in cases in which the prosecution relies mainly on circumstantial evidence. It is the trier of fact, here the juvenile court, not the appellate court, which must be convinced of a defendant's guilt beyond a reasonable doubt. If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing

3

court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11; see also *Jackson v. Virginia* (1979) 443 U.S. 307, 317-320 and *People v. Johnson* (1980) 26 Cal.3d 557, 578.)

Appellate courts do not determine the facts in reviewing a challenge to the sufficiency of the evidence. We examine the record as a whole in the light most favorable to the judgment and presume the existence of every fact the trier of fact could reasonably deduce from the evidence in support of the judgment. (*People v. Guerra* (2006) 37 Cal.4th 1067, 1129 [questioned on another ground in *People v. Rundle* (2008) 43 Cal.4th 76]; *People v. Kraft* (2000) 23 Cal.4th 978, 1053.) Unless the testimony of a single witness is physically impossible or inherently improbable, it is sufficient for a conviction. (Evid. Code, § 411; *People v. Young* (2005) 34 Cal.4th 1149, 1181.)

An appellate court must accept logical inferences that the jury might have drawn from circumstantial evidence. (*People v. Maury* (2003) 30 Cal.4th 342, 396.) Before setting aside the judgment of the trial court for insufficiency of the evidence, it must clearly appear that there was no hypothesis whatever upon which there was substantial evidence to support the verdict. (*People v. Conners* (2008) 168 Cal.App.4th 443, 453; *People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573.)

A defendant's intent to commit theft can be established in part by secret and noiseless entry in an unusual manner at an odd hour of the night in a residence where the defendant was not an invited guest. (*People v. Corral* (1964) 224 Cal.App.2d 300, 304.) Because of the location of the fingerprints in this case, the jury could properly infer that they had been impressed at the time the burglary was committed. (*Id*. at p. 306.) Fingerprints are the strongest evidence of the identity of a person. A single fingerprint near an unusual means of access is sufficient to support a burglary conviction. (*People v.*

*Massey* (1961) 196 Cal.App.2d 230, 233-234.)  Burglary cases may be proved by circumstantial evidence.  (*Ibid.*; *People v. Rodis* (1956) 145 Cal.App.2d 44, 47.)

In *People v. Bean* (1988) 46 Cal.3d 919, 933-934, our Supreme Court found that a fingerprint found on a window screen and a palm print on the sink counter of the home, did show that the defendant was the perpetrator of the crime.  Our Supreme Court has also emphasized that fingerprints are the strongest evidence of identity and are ordinarily sufficient by themselves to identify the perpetrator of the crime.  (*People v. Andrews* (1989) 49 Cal.3d 200, 211; *People v. Johnson* (1988) 47 Cal.3d 576, 601; *People v. Risner* (1956) 47 Cal.2d 566, 589.)

In *Mikes,* the defendant was convicted of first degree murder with use of a deadly or dangerous weapon.  The victim was found dead in his basement shop with the pockets of his clothing turned inside out.  Investigators found three chrome posts, a post three feet long, a six-foot post, and a turnstile post that were from a turnstile the victim purchased from the closing sale of a hardware store.  The purchase occurred about four months prior to the victim's murder.  The prosecution's case was based exclusively on the presence of defendant's fingerprints on three chrome turnstile posts located next to the victim's body.  (*Mikes*, *supra*, 947 F.2d at pp. 355-356.)

The *Mikes* court held that evidence of the defendant's fingerprints on the three posts was not sufficient, by itself, to allow a rational trier of fact to convict the defendant of murder.  (*Mikes*, *supra*, 947 F.2d at pp. 355-356.)  The *Mikes* court further held that in fingerprint-only cases in which the prosecution's theory is based on the premise that the defendant handled certain objects while committing the crime in question, the record must contain sufficient evidence from which the trier of fact could reasonably infer that the fingerprints were in fact impressed at that time and not at some earlier date.  (*Id.* at pp. 356-357.)  To meet this standard, the prosecution must present evidence sufficient to permit the jury to conclude that the objects on which the fingerprints appear were

5

inaccessible to the defendant prior to the time the crime was committed. (*Id.* at p. 357.) The turnstile posts in *Mikes* had been in a public place for some indeterminate period prior to the victim's purchase and were accessible to the general public. (*Id*. at pp. 358-359.) As a result, the Ninth Circuit concluded that the defendant's conviction violated his right to due process and reversal was required. (*Mikes, supra,* 947 F.2d at pp. 358-359, 361.)

Here, the victim's residence was left secure at 5:00 a.m. When the victim returned home after 5:00 p.m. the same day, his home was ransacked and property had been stolen. Entry into the home was through a window on the southwest corner of the home. A screen had been removed from the window. Inside the victim's home, Deputy Englend found a strange knife that the victim did not own and had never seen before. The knife had appellant's fingerprints on it. Appellant had no permission to be in the victim's home and the victim did not recognize appellant. In addition, there were no other fingerprints found on the knife. From this, the court could reasonably infer that only appellant could have handled the knife and brought it into the victim's residence.

We find that the factual scenario in *Mikes* is inapposite to the facts in the instant action because, unlike the turnstile posts in *Mikes*, there is no evidence here showing that the knife found in the victim's home was accessible to the general public prior to being found in the victim's home. We also note that *Mikes* is not binding authority on California courts; it is persuasive authority. (*People v*. *Tuggle* (2012) 203 Cal.App.4th 1071, 1075-1076; *People v*. *Figueroa* (1992) 2 Cal.App.4th 1584, 1586-1587.) To the extent that this case can be construed factually as a fingerprint-only case, we find *People v. Bean*, *supra,* 46 Cal.3d 919, the long line of California Supreme Court authorities preceding it, and the decisions of the California Courts of Appeal, to be controlling here and reject appellant's challenge to the sufficiency of the evidence to support the juvenile court's finding that he committed first degree residential burglary.

## DISPOSITION

The findings and orders of the juvenile court are affirmed.